UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: January 20, 2011

HOSPITAL AUTHORITY OF
ROCKDALE COUNTY,

                Plaintiff,

  - against -

GS CAPITAL PARTNERS V FUND, L.P., et al.,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

09 Civ. 8716 (PAC)

OPINION & ORDER

HONORABLE PAUL A. CROTTY, United States District Judge:

      GS Capital Partners V Fund, L.P., GS Capital Partners V Offshore Fund, L.P., GS Capital Partners V GmbH & CO. KG, and GS Partners V Institutional, L.P. (collectively, "GSCP") move under Fed. R. Civ. P 12(b)(6) to dismiss Plaintiff Hospital Authority of Rockdale County's ("Hospital Authority") second amended complaint. Hospital Authority's claims arise out of a series of agreements in 2007 which contemplated the sale of plaintiff's hospital to Signature Hospital Holding, LLC. In connection with the sale, GSCP signed a commitment to finance Signature's asset purchase agreement up to $87.7 million. Shortly before closing, GSCP informed Hospital Authority that it would provide only $35 million in financing and, Hospital Authority alleges, the deal fell through. Because the sale did not close with Signature, Hospital Authority received $1 million in liquidated damages from Signature. Defendants claim that such payment was Plaintiff's sole remedy for any breach or failure to close involving this proposed transaction.

      Hospital Authority subsequently sold the hospital to a different buyer for less money and, on October 15, 2009, commenced this action against GSCP for breach of its commitment to finance on two grounds—by anticipatory repudiation and by breach of the duty of good faith and

fair dealing.  GSCP argues that it cannot be liable for breach of a commitment to finance which was conditioned on the execution of an asset purchase agreement which never occurred.  In addition, it maintains that Hospital Authority suffered no injury because Signature always had the absolute right to walk away for a payment of liquidated damages, which Hospital Authority admittedly received.  Hospital Authority counters that GSCP's anticipatory breach of the financing commitment caused the deal to collapse, preventing the occurrence of the condition that GSCP now claims excuses its breach.  It also argues that GSCP cannot seek the benefits of Signature's payment of liquidated damages, as they were provided for in a contract to which GSCP was not a party.

## I.  Facts[1]

In August 2007, Hospital Authority, a public entity, and its lessee Rockdale Medical Center, Inc. ("RMC"; collectively, "Sellers"), entered into a letter of intent with Signature for the sale of a hospital at a purchase price of $87.7 million.  (2d Am. Compl. ¶¶ 15, 16.)  An asset purchase agreement was drafted but never signed.  (Id. ¶¶ 15, 29.)  The proposed sale required the approval of the Office of the Attorney General of Georgia under the Georgia Hospital Acquisitions Act, O.C.G.A. § 37-7-400, et seq., and the Buyer and Sellers filed an application for approval.

The commitment letter, dated August 27, 2007, was drafted by GSCP.  Paragraph 1 of the letter requires GSCP to "provide, or . . . cause the provision of, financing to Signature, in connection with the transactions contemplated by the [asset purchase agreement], for consideration of up to $87.7 million in the aggregate."  (Decl. of Shahzeb Lari in Supp. ("Lari Decl.") Ex. 4, ¶ 1.)  Paragraph 1 also provides that the amount of commitment "may be reduced

---

[1] The facts are taken from the second amended complaint, the relevant agreements (which are incorporated by reference), and materials subject to judicial notice.

in a manner agreed to by the Investors and Signature in the event that Signature does not require all of the financing." Paragraphs 2(a) and 6 further condition the commitment on the execution of the asset purchase agreement and disclaim any responsibility for the closing of the sale. (Id. ¶¶ 2(a), 6 ("[N]othing in this letter agreement shall be read as a guaranty of performance or other obligation of [GSCP] to undertake or ensure the performance of any obligation of any party under the [asset purchase agreement]").) Paragraph 8 provides that all financing obligations terminate on the earlier of (i) the termination of the asset purchase agreement; (ii) the completion of the sale of the hospital to Signature; or (iii) January 31, 2008. (Id. ¶ 8.)

On August 28, 2007, Hospital Authority, as seller, and Signature, as buyer, signed a Good Faith Deposit Agreement ("Deposit Agreement") under which Signature placed a $1 million deposit in an escrow account as consideration for the Sellers' agreement to negotiate exclusively with Signature until the earliest of the three events named in ¶ 8 of the Commitment Letter. (Lari Decl., Ex. 3, § 1.5.) The Agreement provided that the deposit would serve as liquidated damages to compensate the Sellers for lost opportunities, time, and expenses if the transaction was not completed. Under its terms, if Signature backed out "for any reason," the sellers would receive the deposit. (Id. § 2.1(a)(vi).) The agreement further provided that "such sum constitutes Sellers' sole remedy in respect of a breach or failure to close by Signature." (Id. § 1.5.)

Hospital Authority contends that Sellers and Signature were "ready, willing and able to close the transaction," having confirmed to the Attorney General their intent to proceed, when, on December 18, 2007, GSCP informed Sellers that it was not willing to fund the entire $87.7 million purchase price, but only $35 million. (Id. §§ 23, 27.) This reduced the financing available by 60%. Hospital Authority contends that this decision caused the proposed

3

transaction to collapse right before the expected Attorney General approval and closing, at a time when securing alternate financing was virtually impossible. (Id. §§ 34, 37.) GSCP's decision caused Hospital Authority to risk breaking the obligations in its bond agreements, lower bond ratings, and higher interest payments, with losses for hospital operations and in staff. (Id. § 34.) Sellers and Buyer looked for alternative financing to no avail. (Id. § 36.) In February 2009, Hospital Authority sold the hospital to Historic LifePoint Hospital, inc. in a less beneficial transaction. (Id. §§ 39.)

Hospital Authority filed the second amended complaint on February 8, 2010, claiming over $29 million in damages against GSCP for breach of contract by (1) anticipatory repudiation; and (2) breach of the duty of good faith and fair dealing. (Id. ¶¶ 40, 43, 48.)

## II. Discussion

When considering a motion to dismiss made pursuant to Fed. R. Civ. P. 12(b)(6), the Court assumes all facts alleged in the complaint are true, and resolves all reasonable inferences and contractual ambiguities in favor of the plaintiff.

GSCP argues first that since the asset purchase agreement was never executed, there was no underlying transaction for GSCP to finance, and its financing commitment was never triggered. (Mem. in Supp. 11-12.) Additionally, GSCP contends that the Deposit Agreement provided the sole remedy in case the transaction was not completed. (Id. 16-18.) Hospital Authority responds first that GSCP "cannot now rely upon the performance or satisfaction of the conditions in the Commitment [Letter], having waived compliance with or performance of those conditions by [its] conduct." (Id. 15-16.) In other words, GSCP cannot rely upon the failure to perform a condition precedent to performance where GSCP has prevented or frustrated the fulfillment of the condition. Second, the Deposit Agreement provided the sole remedy as

between the Sellers and Signature.  GSCP is a stranger to that contract and not a third party beneficiary.  (Mem. in Opp. 25-27.)

The second amended complaint meets the applicable pleading requirements:  GSCP has adequate notice of the claims that plaintiff is making.

### A.  Anticipatory Repudiation

In order to state a claim for anticipatory repudiation, the plaintiff must allege that the defendants expressed an unequivocal intent to forego performance.  See Norcon Power Partners, L.P. v. Niagara Mohawk Power Corp., 705 N.E.2d 656, 659 (N.Y. 1998); Tenavision, Inc. v. Neuman, 379 N.E.2d 1166, 1168 (N.Y. 1978); see also Palazzetti Import/Export, Inc. v. Morson, No. 98 Civ. 722, 2001 U.S. Dist. LEXIS 20243, at *27 (S.D.N.Y. Dec. 6, 2001) (holding that there has to be "a clear and unqualified refusal to perform the entire contract").

The allegation that GSCP anticipatorily repudiated its obligations by informing the Sellers that it would not provide the entire $87.7 million purchase price, but only $35 million, fulfills these pleading requirements.  (2d Am. Compl. ¶¶ 26-28, 43.)  On its face, the Commitment Letter requires funding of "up to $87.7 million."  "Up to" does not mean that GSCP can provide any amount it wishes between $1 and $87.7 million.  The following clause states that a lesser amount can be renegotiated if the full amount is not necessary.  This explains why the full purchase price is qualified by "up to."  Whether GSCP actually attempted to renegotiate a lower amount of financing at only $35 million, or whether GSCP informed Hospital Authority that it was continuing to locate other financing for the balance, are questions of fact that cannot be resolved on this motion to dismiss.

GSCP's focus on what its commitment letter did not do—guaranty the completion of the sale—is a distraction from what it did do—namely, to provide financing of up to $87.7 million,

the entire amount necessary to finance the proposed asset purchase agreement.  If it anticipatorily breached this commitment, GSCP waived performance of any conditions precedent, including the execution of the asset purchase agreement.  See In re Bankers Trust Co., 450 F.3d 121, 127 (2d Cir. 2006) ("One who unjustly prevents the . . . happening of a condition of his own promissory duty thereby eliminates it as such a condition [and] will not be permitted to take advantage of his own wrong, [by] escap[ing] from liability for not rendering his promised performance . . . ." (quotations omitted)); Cross & Cross Props., Ltd. v. Everett Allied Co., 886 F.2d 497, 501-02 (2d Cir. 1989).  General Electric Capital Corporation v. D'Agostino Supermarkets, Inc. is to the same effect.  No. 03 CV 8539, 2005 U.S. Dist. LEXIS 14446 (S.D.N.Y. July 18, 2005).  Judge Owen held that the allegation that the deal collapsed because the defendant refused to fund the merger in the final hours was sufficient to survive a motion to dismiss.  See id. at *5, 6-7.[2]

Finally, GSCP argues that, by accepting the $35 million offered, Hospital Authority lost its right to bring a claim for anticipatory repudiation.  "When confronted with an anticipatory repudiation, the non-repudiating party has two mutually exclusive options[:] (a) elect to treat the repudiation as an anticipatory breach and seek damages for breach of contract, thereby terminating the contractual relation between the parties, or (b) … continue to treat the contract as valid and await the designated time for performance before bringing suit." Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002); Rachmani Corp. v. 9 East 96th Street Apartment Corp., 629 N.Y.S.2d 382, 384 (N.Y. App. Div. 1st Dep't 1995).  The question of whether Hospital Authority accepted this $35 million, which is far from conceded, whether it

---

[2] GSCP cites some case law that the non-occurrence of a condition may be excused by prevention only if the duty of good faith and fair dealing was breached.  See, e.g., Cross & Cross, 856 F.2d 497.  Although this further requirement is limited to cases where "some sort of prevention or interference is contemplated by the parties as quite proper and within [their] privileges," Hospital Authority has adequately pleaded the breach of this duty, as discussed below.  Id. (quotation omitted).

6

proceeded under the allegedly-repudiated agreement or, in the wake of its breach, attempted to negotiate a new agreement in order to mitigate the breach presents questions of fact that cannot be determined at this juncture.

### B. Liquidated Damages

GSCP asserts that its argument is underscored by the fact that even Signature, a party to the proposed asset purchase agreement, reserved, and in fact lawfully exercised, its right to walk away from the transaction. (Mem. in Supp. 16-18.) Signature separately contracted with the Hospital Authority for this right to walk away. Hospital Authority received $1 million in liquidated damages as its sole remedy. GSCP essentially argues that it should benefit from this agreement. But it was not a party,[3] and as a non-party, GSCP has no standing to enforce or receive the agreement's benefits. See GFI Brokers, LLC v. Santana, Nos. 06 Civ. 3988, 06 Civ. 4611, 2008 WL 3166972 (S.D.N.Y. Aug. 6, 2008). Liquidated damages are a "wholly contractual creation, resulting from an [express] agreement by the parties to the contract to forego calculations of actual damages in favor of a liquidation of the anticipated damage." Id. Here, Hospital Authority had two separate contracts, risking two separate breaches and, therefore, two separate injuries. Accordingly, this provision cannot be invoked in GSPC's defense.

### C. Breach of the Duty of Good Faith and Fair Dealing

The duty of good faith and fair dealing does not create any obligations beyond those expressly stated in the contract. See, e.g., Gruppo, Levey & Co. v. ICOM Info. & Commc'ns, Inc., 01 Civ. 8922, 2003 U.S. Dist. LEXIS 11213, at *28 (S.D.N.Y. July 1, 2003). Rather, it is an implied duty to use "reasonable efforts" to advance the contract's primary goals. See Wood v. Lucy, Lady Duff-Gordon, 222 N.Y. 88, 90-91 (1917). This duty includes a promise "not to

---

[3] GSCP does not argue that it is a third party beneficiary, and the agreement evidences no such intention.

act arbitrarily or irrationally in exercising contractual discretion." Dalton v. Educ. Testing Serv., 87 N.Y.2d 384, 389, 639 N .Y.S.2d 977, 978-80 (N.Y. 1995).

A claim for breach of the duty of good faith and fair dealing does not provide a cause of action separate from a breach of contract claim. See, e.g., Harris v. Provident Life & Acc. Ins. Co., 310 F.3d 73, 80-81 (2d Cir. 2002); Horowitz v. Am. Int'l Grp., No. 09 Civ. 7312 (PAC), 2010 U.S. Dist. LEXIS 103489, at *31 (S.D.N.Y. Sept. 30, 2010). This simply means that it is duplicative to plead two separate claims—one for breach of contract and another for breach of the implied duty. Rather, a party breaches a contract by breaching the implied duty. In such cases, the plaintiff must allege not that the contract's express terms were violated but that its purpose was subverted, depriving him of his reasonable expectations. See JPMorgan Chase Bank, N.A. v. IDW Grp., LLC, No. 08 Civ. 9116 (PGG), 2009 U.S. Dist. LEXIS 9207, *16 (S.D. N.Y. Feb. 9, 2009). That said, the plaintiff may bring two breach of contact claims, one based on breach of the express terms and the other based on breach of the implied duty, as long as they are supported by factually distinct allegations.[4] See id.; see generally 28 N.Y. Prac., Contract Law § 11:16, :17, :23.

Resolving all well-pleaded inferences and contractual ambiguities in its favor, Hospital Authority states a claim for relief. While GSCP may prove that its withdrawal was not arbitrarily or irrationally motivated, the complaint provides some facts from which one could infer that GSCP's conduct "was done . . . in bad faith." (2d Am. Compl. ¶¶ 27, 28, 34, 35); see O'Connor v. Sleasman, 830 N.Y.S.2d 377, 379 (N.Y. App. Div. 2d Dep't 2007). Hospital Authority pleads two distinct grounds for breach—anticipatory repudiation and failure to

---

[4] For example, a complaint cannot allege that the defendant breached the contract by failing to pay the $500 promised and breached the implied duty by failing to pay the $500. It may, however, allege that the defendant breached the contract by breaching the express term of payment of $500 or, alternatively, by acting with bad faith in paying after the date on which the money was implicitly understood to be needed.

8

exercise good faith and fair dealing. They allege that, even if GSCP did not breach its promise to provide or cause the provision of financing, its actions defeated the purpose of the contract (i.e., facilitating the Signature transaction). The factual basis for the latter claim is not GSCP's mere announcement of its intent not to perform, but rather its refusal to provide an explanation, the timing of its decision, and its knowledge of Sellers' reliance on its commitment. (2d Am. Compl. ¶¶ 28.) GSCP claims that its offer of $35 million in place of the full $87.7 million purchase price demonstrates its good faith and fair dealing. This conflict presents questions of fact, however, and cannot be dismissed at this stage.

For the foregoing reasons, GSCP's motion to dismiss is DENIED. The Clerk is directed to terminate the motion at Docket No. 19. The parties must submit a proposed civil case management plan by February 7, 2011 for the Court's approval.

Dated: New York, New York
      January 20, 2011

SO ORDERED

*Paul A. Crotty* (signature)

PAUL A. CROTTY
United States District Judge